IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD EARL MINDER,<br>      Petitioner,<br><br>      v.<br><br>WARDEN LOCKETT, et al.,<br>      Respondents. | Civil Action No. 08-214 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT[1]

    A. **Relevant Background**

On July 11, 2003, an Erie County jury convicted Petitioner Donald Earl Minder of possession with intent to deliver methamphetamine ("PWID") and criminal conspiracy. Assistant Public Defender Andrew H. Weinraub, Esquire, represented him during much of the pretrial proceedings and all of the trial proceedings.

At Petitioner's trial, the Commonwealth offered the testimony of Nicholas Babay, an informant; Agents Christopher Parker, Timothy S. Albeck, and Jon Vesnesky of the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control; Brett A. Bailor, a forensic

---

[1] Respondents have submitted the relevant transcripts and the Common Pleas Court's file, which will be cited to as "CP Dkt. No. __."

1

scientist with the Erie Regional Crime Laboratory; and, Trooper Craig W. Askins, a Pennsylvania State Trooper assigned to the forensic services unit. Petitioner did not call any witnesses.

The Superior Court of Pennsylvania summarized the evidence presented at Petitioner's trial as follows:

> On October 3, 2002, narcotics agents entered a motel room in Erie, Pennsylvania, registered to Nicole Mitchell [who was a co-defendant of Petitioner's at his trial]. Inside, they found [Petitioner], the sole occupant of the room at that time, half asleep on the bed. They proceeded to execute a search warrant, and found nearly one pound of methamphetamine in a vent over an exhaust fan in the ceiling of the bathroom of the rented room. The agents also discovered another bag containing methamphetamine residue, a propane tank and top, and $1,047.00 in U.S. currency. The total value of the methamphetamine found in the room was approximately $35,000. As a result of their discovery of the narcotics, the agents arrested [Petitioner], who then made statements to one of the agents [Parker] which included information that the methamphetamine was coming from Ohio and that others were involved in its transportation to and sale in Pennsylvania.
>
> At trial, a confidential informant, Nicholas Babay, testified on behalf of the Commonwealth. Babay had been in Columbus, Ohio in September of 2002 where he met with Nicole Mitchell, Chris Howcroft, and Jordan Elsel. In subsequent telephone conversations with Howcroft, Babay arranged to buy methamphetamine from them in Erie for $2,000 an ounce. Howcroft advised Babay that Mitchell and [Petitioner] would be traveling to Erie from Evans City, and that Babay would be able to purchase the drugs from them. When Babay met [Petitioner] in the motel room,[2] [Petitioner] told Babay that the price of an ounce had risen from $2,000 to between $2,300 and $2,400. [Petitioner] told Babay that [Petitioner] wanted Babay to wait to make his purchase until he had enough money to buy four ounces, which would result in a cheaper per ounce cost. Babay returned to [Petitioner's] motel room a second time and tried to purchase at least half an ounce, but [Petitioner] stated that he did not want to get it from where it was stashed and that Babay should wait until the morning for co-defendant Jordan Helsel to return from Pittsburgh in order for the two of them to combine their funds to consummate the purchase.
>
> Based upon the information provided to them by Babay, the narcotics agents obtained the search warrant, executed as described above, on the morning following Babay's meeting with [Petitioner] and Mitchell.

---

[2] Babay observed Petitioner and Mitchell preparing to use methamphetamine while he was in their motel room. (N.T. 7/11/03, first session, at p. 36).

2

(CP Dkt. No. 41, Commonwealth v. Minder, No. 2079 & 2119 WDA 2003, slip op. at 3-4 (Pa.Super. July 20, 2005)).

As noted in the above recitation, Petitioner made statements to Agent Parker that were admitted against him at the trial. Agent Parker testified that when Petitioner was at the police station, he voluntarily spoke to him and told him about his cooperation in and knowledge of illegal methamphetamine production and distribution. (N.T. 7/11/03, first session, at pp. 7-8, 12-13).[3]

The Common Pleas Court sentenced Petitioner to 8-10 years of incarceration for his conviction of PWID, and a concurrent 5-10 years of incarceration for his conspiracy conviction. Petitioner, through Attorney Weinraub, filed a post-sentence motion in which he sought judgment of acquittal on both counts of his convictions. (CP Dkt. Nos. 21, 23). On November 11, 2003, the Common Pleas Court entered an Order granting Petitioner's motion for judgment of acquittal in part, finding that there was insufficient evidence presented at trial to support the PWID conviction. (CP Dkt. No. 24). Petitioner filed an appeal with the Superior Court[4] in which he challenged his remaining conspiracy conviction by arguing that the jury's verdict was against the weight of the evidence. The Commonwealth cross-appealed the judgment of acquittal on the PWID conviction. (CP Dkt. No. 41, Minder, No. 2079 & 2119 WDA 2003, slip op. at 5).

On July 20, 2005, the Superior Court issued a Memorandum in which it: (1) affirmed Petitioner's judgment of sentence for conspiracy; and (2) reversed the order granting the motion for

---

[3] Petitioner also made a statement to Agent Albeck when he and another agent were transporting him to the office of a local district justice. Agent Albeck testified at the trial that as they were driving, Petitioner "kind of panicked, … he didn't believe Chris Howcroft was arrested this day and he had told me – and I have it quoted in my report but I can give you the best recollection would be, 'Why isn't Chris here? He was the one driving around doing all the deliveries.'" (7/11/01 N.T., midmorning session, at p. 15).

[4] Joseph Paul Burt, Esquire, of the Eric County Public Defender's Office, is listed as Petitioner's counsel of record in his appeal to the Superior Court.

3

judgment of acquittal for the PWID conviction. The Superior Court agreed with the Commonwealth that it had introduced sufficient evidence at trial to support the jury's PWID verdict. (CP Dkt. No. 41, Minder, No. 2079 & 2119 WDA 2003, slip op. at 5-11). The Pennsylvania Supreme Court denied a petition for allowance of appeal on December 21, 2005.

On or around May 7, 2006, Petitioner collaterally challenged his judgment of sentence by filing a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (CP Dkt. No. 42). The PCRA Court appointed William J. Hathaway, Esquire, to represent him. Attorney Hathaway filed a supplemented PCRA petition. (CP Dkt. No. 46). In relevant part, Petitioner claimed, as he does here, that his trial counsel was ineffective for: (1) failing to file a motion to suppress the incriminating statements he made to Agent Parker; and, (2) failing to object to the admissibility of the picture of the currency seized from the motel room.

The PCRA Court held an evidentiary hearing on November 27 and December 20, 2006, during which Petitioner and Attorney Weinraub testified. Following the hearing, the court denied the PCRA petition, as supplemented by counsel, for reasons which will be set forth below. (CP Dkt. Nos. 55, 59). Petitioner, through Hathaway, filed an appeal with the Superior Court. On December 31, 2007, the Superior Court adopted the PCRA Court's opinion as fully dispositive of the issues raised in the appeal and affirmed the denial of collateral relief. (CP Dkt. No. 62, Commonwealth v. Minder, No. 362 WDA 2007, slip op. (Pa.Super. Dec. 31, 2007)). The Pennsylvania Supreme Court subsequently denied a petition for allowance of appeal.

Petitioner commenced proceedings in this Court in July of 2008 by filing a motion for leave to proceed *in forma pauperis*, which was denied. In October of 2010, the U.S. Court of Appeals for the Third Circuit vacated this Court's order denying *in forma pauperis* status and remanded for further proceedings. Petitioner's habeas petition [ECF No. 17] was entered on this Court's docket on February

11, 2011. Therein, Petitioner claims, as he did on direct appeal, that there was insufficient evidence to support the PWID conviction. He also raises the same two ineffective assistance of counsel claims outlined above, which he had raised during the PCRA proceedings. The Commonwealth filed its Response [ECF No. 19] on March 23, 2011, and the case is now ripe for review.

### B. Discussion

#### (1) Standard of Review

Because the Superior Court rejected each of Petitioner's claims on the merits, this Court's analysis is governed by the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") standard of review, which modified "a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[5] Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

---

[5] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of

5

As the Supreme Court recently observed:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, —, 127 S.Ct. 823, 831 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

---

[the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786, quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). This means that "a habeas court must determine what arguments or theories supported or, as here, [when the state court summarily disposes of a claim] could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this [United States Supreme] Court." Id.

### (2) Insufficient Evidence Claim

Petitioner contends that he is entitled to habeas relief from his PWID conviction because there was insufficient evidence to support that conviction. To convict Petitioner of the crime of PWID under Pennsylvania law, the Commonwealth had to prove beyond a reasonable doubt that: (1) he possessed methamphetamine; and (2) that he possessed it with the intent to deliver it. Petitioner contends that the Commonwealth failed to produce sufficient evidence that he "possessed" the methamphetamine.

The "clearly established Federal law" in which to analyze this claim is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147-48 (3d Cir. 1997), quoting Jackson v. Virginia, 443 U.S. at 318-19 (internal citations and quotes omitted). See also Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009).

7

In rejecting Petitioner's claim, the Superior Court applied the Pennsylvania equivalent of the Jackson v. Virginia standard. (CP Dkt. No. 41, Minder, No. 2079 & 2119 WDA 2003, slip op. at 8-9). See also Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). It then explained that under Pennsylvania law, where, as was the case here, the contraband a person is charged with possessing is not found on his person, the Commonwealth must prove constructive possession. (Id. at 9, citing Commonwealth v. Kirkland, 831 A.2d 607, 611 (Pa.Super. 2003)). It noted: "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.' To aid application, we have held that constructive possession may be established by the totality of the circumstances." (Id., quoting Commonwealth v. Walker, 874 A.2d 667, 677-78 (Pa.Super. 2005), which cited Commonwealth v. Parker, 847 A.2d 745, 750 (Pa.Super. 2004)). The Superior Court also noted that "[c]onstructive possession may be inferred if the contraband is located in an area *under the joint exclusive control of the accused and another person*." (Id. at 9-10 (emphasis added), citing Commonwealth v. Carroll, 507 A.2d 819 (Pa. 1986) (finding constructive possession of heroin found in pocket of a pair of woman's jeans in motel room shared by defendant, his wife, and stepdaughter); Commonwealth v. Macolino, 469 A.2d 132 (Pa. 1983) (finding constructive possession of cocaine in bedroom closet shared by husband and wife)).

The Superior Court then determined:

> [T]the Commonwealth did present sufficient evidence for the jury to have found that [Petitioner] constructively possessed the hidden methamphetamine with intent to distribute it. [Petitioner] was an occupant of the rented motel room. Although the room was rented in Mitchell's name, Babay observed [Petitioner] using the room as his own the evening before his arrest, and [Petitioner] was the

8

> only person in it when the agents executed the search warrant. [Petitioner] clearly knew where the methamphetamine was stashed, since he told Babay that he did not want to retrieve it and he would not sell it to him for the pre-agreed price. [Petitioner's] post-arrest indication to the police of his surprise that Chris Howcroft had not also been arrested is a further indication of his possession of an intent to distribute the drugs.
>
> These circumstances are sufficient to establish that [Petitioner] had control over the drugs found in the ceiling vent and that he intended to exercise that control to distribute the drugs. In refusing to engage in an immediate sale to Babay, [Petitioner] exercised control over the timing of the transaction and consciously retained possession of the contraband. Despite Mitchell's inculpatory statement that it was she who stashed the methamphetamine in the ceiling vent, the jury could have chosen either to disbelieve the statement or to believe that [Petitioner] was aware of the location of the drugs and had the ability to see them when he so chose. We conclude that the Commonwealth did establish constructive possession under all the circumstances, and, accordingly, the trial court erred in granting the judgment of acquittal as to the PWID offense.

(CP Dkt. No. 41, <u>Minder</u>, No. 2079 & 2119 WDA 2003, slip op. at 10-11).

There is no basis for this Court to disturb the Superior Court's adjudication under AEDPA's deferential standard of review. 28 U.S.C. § 2254(d). The jury's PWID verdict was supported by the constitutional minimum of evidence necessary and the Superior Court's decision, which utilized the correct governing legal principle as established by the U.S. Supreme Court, was neither "contrary to" or an "unreasonable determination of" that Court's decisions, nor was it an "unreasonable determination of the facts." 28 U.S.C. § 2254(d).

### (3) Ineffective Assistance of Counsel Claims

The "clearly established Federal law" for AEDPA purposes in which to analyze Petitioner's claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>, Petitioner first must show that Attorney Weinraub's representation fell below an

9

objective standard of reasonableness. 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that Weinraub was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (internal citations and quotations omitted). The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires Petitioner to demonstrate that he was prejudiced by Weinraub's alleged deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The PCRA Court (whose decision was adopted in full by the Superior Court) applied the correct legal standard when it evaluated Petitioner's ineffective assistance claims. (CP Dkt. No. 59, Commonwealth v. Minder, No. 2566 of 2002, slip op. at 3 (C.P. Erie Apr. 27, 2007)). See also

10

Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication of Petitioner's claims satisfies review under the "contrary to" clause of § 2254(d)(1). See also Williams, 529 U.S. at 406.

Thus, the only remaining question for this Court to decide is whether the state court's adjudication of either of Petitioner's ineffective assistance claims was an "unreasonable application of" Strickland or of the facts. 28 U.S.C. § 2254(d). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.

### (a)    Failure to file a motion to suppress

Petitioner contends that Attorney Weinraub should have moved to suppress his statements to Agent Parker under the theory that he was in a drug induced state and therefore could not have voluntarily waived his Miranda rights. [ECF No. 17 at pp. 3-7]. He also contends that he had never seen Agent Parker prior to his trial and Weinraub should have moved to suppress his statements on the basis that the agent had fabricated them. (11/27/06 PCRA Hr'g, 10:29 a.m. commencement, at p. 14).

11

Attorney Weinraub testified at the PCRA hearing that he did not file a motion to suppress because he believed that "there was no arguable merit or substance" to one. (Id. at 23).

To support this claim, Petitioner testified at the PCRA hearing that he believes that the morning of his arrest, Nicole Mitchell "slipped" him a "mickey," which he says he "later found out … was like Ketamine," and which made him "out of my mind." (Id. at p. 7). Petitioner testified that "it took me, actually, two to three years to recover" from the incident. (Id. at 8). He also testified that, contrary to Agent Parker's account, he in fact had never spoken to the agent. (Id. at 14, 16).

The PCRA Court did not credit Petitioner's PCRA testimony. It cited to Agent Parker's trial testimony, in which the agent stated that Petitioner had voluntarily agreed to speak with him about the methamphetamine operation, and which did not support a finding that Petitioner was "out of his mind," acting unusual, or otherwise unable to voluntarily consent to speak with the agents. The PCRA Court concluded the "trial record reveals that [Petitioner's] statements were made voluntarily, and in fact he declined to answer questions then subsequently volunteered to speak to Agent Christopher Parker." (CP Dkt. No. 59, Minder, No. 3566 of 2002, slip op. at 4).

In conclusion, Petitioner has failed to support his contention that there was a viable argument to be made that his statements to Agent Parker should have been suppressed. He therefore cannot show that Attorney Weinraub's decision not to file such a motion was objectively unreasonable or that he suffered any prejudice, much less that the PCRA Court's rejection of this claim was an unreasonable application of Strickland or an unreasonable determination of the facts under 28 U.S.C. § 2254(d). See also Strickland, 466 U.S. at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable."); Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel is not ineffective for failing to raise meritless claims).

### (b) Failure to object to admissibility of currency

During his direct testimony, the prosecutor presented Agent Albeck with a photo $1,047 in U.S. currency, which was designated as Exhibit 3-B, and asked him what it showed. Agent Albeck, who executed the search warrant of Petitioner's hotel room along with Agent Parker and another agent, testified that it was a picture of the money that Agent Parker had found inside Petitioner's motel room, "which I also obtained and placed into evidence." He also indicated that Agent Parker would testify about where in the hotel room he found the currency. (N.T. 7/10/03, 2:50 p.m. commencement, at p. 40). The next day, during his direct testimony, Agent Parker was asked by the prosecutor "if you yourself found anything in the room that was seized?" (N.T. 7/11/03, first session, at p. 6). Agent Parker stated: "I don't know that I found anything in particular. I assisted in searching." (Id.)

At the conclusion of all testimony, the trial court held a conference with the parties during which they reviewed the jury instructions and the exhibits. During a discussion about Exhibit 3-B, the following exchange occurred:

| | |
|---|---|
| Mr. Weinraub: | "The money, your Honor, they didn't bring the money in. There is no evidence that, other than the picture of the money, so they didn't submit it into evidence. They didn't bring it into the courtroom. The money wasn't – is this how the money was found? |
| The Court: | I don't know. I don't believe there was any testimony about how the money was found. |
| Prosecutor: | No, there was money found in the room. |
| The Court: | Hold on just a minute. Was there testimony that the money was found in the room? |
| Prosecutor: | Yes. Yes. |

| | |
|---|---|
| The Court: | Do you disagree with that, Mr. Weinraub? |
| Mr. Weinraub: | No, I don't disagree with that. |
| The Court: | I believe Agent Albeck testified to the $1,000 in cash that apparently he received from an agent in the room. Is that the testimony? |
| Mr. Weinraub: | That's fine, your Honor. |
| The Court: | But there was no other testimony concerning actually where it was located, I take it? |
| Prosecutor: | I'll clarify it so that it isn't misleading, Judge. I mean, I think it's pretty obvious anyway but I'll make sure. |

(N.T. 7/11/03, midmorning session, at pp. 28-29). During his closing argument, the prosecutor stated: "Money in the room…. We're not sure where it was found. The testimony simply was that there was over $1,000 in the room." (Id. at 48).

Petitioner claims that "[t]here was/is a serious question with the truth surrounding the supposed recovery of this money … however, trial counsel never properly tested the chain of custody." [ECF No. 17 at p. 8]. At the PCRA hearing, Attorney Weinraub countered Petitioner's allegation: "I don't think there was any, I would say there was no plausible argument for me to make that the money was not found in the room. It was found in the room without question." (12/20/06 PCRA Hr'g at p. 11). The PCRA Court agreed with Attorney Weinraub, concluding: "There is nothing in the record to indicate Attorney Weinraub's conclusion, that it was beyond debate that the money was found in the room, was unreasonable. Agent Albeck's testimony that Agent Parker found it in the room, that Agent Albeck had obtained it and placed it into evidence was sufficient to allow the photograph of the money to be admitted. An objection would have been futile[.]" (CP Dkt. No. 59, Minder, No. 3566 of 2002, slip op. at 5).

14

As the PCRA Court concluded, Agent Albeck's testimony was sufficient to establish the admissibility of Exhibit 3-B. He had executed the search warrant and had entered the hotel room with Agent Parker. He recalled that Agent Parker had first located the money and that he had given it to him to secure as evidence. He identified the exhibit as being a picture of the money that had been seized. Under the circumstances, that Agent Parker did not specifically recall being the one who first located the money in the room did not so weaken Agent Albeck's testimony such that Exhibit 3-B should not have been admitted. Accordingly, Petitioner has not shown that the PCRA Court's denial of this claim was an unreasonable application of Strickland or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d).

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition For Writ Of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 (3d Cir. 2011).

<u>/s / Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: May 18, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge